

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EAG:AL/RTP
F.# 2011R00633

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 29, 2016

By Hand and ECF

The Honorable Jack B. Weinstein
Senior United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Joseph Sclafani
               Criminal Docket No. 11-345 (JBW)

Dear Judge Weinstein:

      The government respectfully submits this letter in response to the defendant Joseph Sclafani's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Document 327), in which he argues that in light of the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015), he was improperly designated as a career offender under the residual clause to the career offender Guidelines and therefore is entitled to be resentenced. For the reasons set forth below, the Court should deny the motion in its entirety and not issue a certificate of appealability.

I.      Background

      On April 11, 2013, the defendant pled guilty, pursuant to a plea agreement, to the lesser-included offense of Count One of the third superseding indictment in the above-captioned case (the "Indictment"), charging him with conspiracy to possess with intent to distribute cocaine between January 2005 and January 2012, in violation of 21 U.S.C. § 846. The defendant also pled guilty to Charge Two of the Violation of Supervised Release report filed in United States v. Joseph Sclafani, 99 CR 1146 (the "VoSR"), charging him with the commission of Count One while on supervised release.

      Between 2008 and August 2011, the defendant, a member of the Gambino organized crime family, conspired to distribute, and in fact distributed, multi-kilogram amounts of cocaine in Brooklyn and Staten Island. The defendant and Robert Fogliani, who is now a cooperating witness, obtained cocaine primarily from Neil Lombardo. Lombardo,

who, like Sclafani, is a member of the Gambino organized crime family, used his connections with Mexican drug traffickers to purchase cocaine directly from Mexico. Lombardo arranged for shipments of cocaine to be sent from Mexico to the Las Vegas area, where he resided, and then from Las Vegas to Brooklyn. Once the cocaine was in Brooklyn, Lombardo would store it at his daughter's apartment and personally deliver it to Sclafani or Fogliani. Sclafani and Fogliani would, in turn, sell the cocaine to their dealers located in Staten Island and Brooklyn. They would then deliver hundreds of thousands of dollars in narcotics proceeds to Lombardo. On several occasions, Lombardo instructed Sclafani and Fogliani to deliver the proceeds to his daughter at her apartment.

The defendant's conviction was not his first. In 1990 he was convicted of harboring a fugitive in the Eastern District of New York, resulting in a 33-month term of imprisonment and three-year term of supervised release, after he provided money, guns and transportation to a man who had murdered an agent of the Drug Enforcement Administration. (Sclafani PSR ¶ 54.) In addition, Sclafani has a 1990 conviction for weapon possession, specifically criminal possession of weapon in the second degree, in violation of New York Penal Law Section 265.03 (the "weapon conviction"), a 1999 conviction for conspiracy to commit bank fraud, and a 2000 conviction for racketeering and conspiracy to distribute cocaine, each of which resulted in a significant term of imprisonment. (Id. ¶¶ 53, 55-56.)

In the plea agreement, the government estimated that the defendant was a career offender pursuant to Guideline 4B1.1 and that his Guidelines advisory range of imprisonment was 168 to 210 months on Count One.[1] Plea Agreement (attached hereto as Exhibit A) ¶ 2. The government further estimated that the effective Guidelines range of imprisonment on Charge Two of the VoSR was 18 to 24 months. The government therefore estimated that the effective Guidelines range of imprisonment was therefore 186 to 234 months. The government, however, agreed that it would take no position as to whether the sentence imposed on Charge Two should run concurrently or consecutively to the sentence imposed on Count One. Id. The government also agreed that it would withdraw the filing of its prior felony information, which would have subjected the defendant to a mandatory minimum sentence of 20 years' imprisonment.

The defendant stipulated to the government's Guidelines calculation on Count One. Plea Agreement ¶ 2 ("The defendant stipulates to the above Guidelines calculation."). He further agreed that he and the government would jointly recommend to the Court that he be sentenced within the Guidelines range of 168 to 210 months' imprisonment on Count One to which he had stipulated. Id. He further agreed that he would not appeal or otherwise challenge his sentence in the event that he was sentenced to 276 months or below and that he

---

[1] Specifically, the government estimated and the defendant stipulated that the defendant would be sentenced as a career offender; would receive only a two-level reduction in his offense level for acceptance of responsibility; and would receive a two-level reduction in his offense level for his participation in a global plea disposition. Plea Agreement ¶ 2.

was waiving his right to challenge his sentence "without regard to the sentencing analysis used by the Court." Id. ¶ 4.

Judge Gleeson sentenced the defendant on August 16, 2013. Despite stipulating to the government's Guidelines estimate and agreeing that he would recommend to the Court that he be sentenced within the Guidelines range of 168 to 210 months' imprisonment on Count One, the defendant breached the plea agreement prior to and at the sentencing hearing when he argued, among other things, that: (1) he was not a career offender because his 1990 weapon conviction was not a crime of violence under the residual clause of U.S.S.G. § 4B1.1; (2) his advisory Guidelines range was 135 to 168 months' imprisonment; and (3) the Court should sentence him to 124 months' custody.

In response to the defendant's several material breaches of the plea agreement, the government argued that the defendant should be sentenced to 210 months' imprisonment, which was the top of the parties' agreed-to recommended range. See United States v. Cimino, 381 F.3d 124, 127-28 (2d Cir. 2004) (holding that defendant's breach of plea agreement by challenging the stipulated Guidelines range and advocating a downward departure freed the government from its obligations under the agreement and permitted it to seek a higher sentence than had been stipulated to in the agreement).

After hearing the parties' arguments on whether the defendant's 1990 weapon conviction qualified as a crime of violence under the residual clause of the career offender Guideline, Judge Gleeson relied on the Second Circuit's ruling in United States v. Lynch, 518 F.3d 164 (2d Cir. 2008), in ruling that it did. Judge Gleeson found that the defendant's advisory range of imprisonment was 168 to 210 months and sentenced the defendant to 180 months. In sentencing the defendant to a sentence in the middle of the agreed-to range, Judge Gleeson noted the defendant's serious criminal history, the fact that he committed a serious drug trafficking crime as part of a "life of crime," and that he was a member of an organized crime family. See August 16, 2013 Sentencing Transcript at 15-17. In addition, Judge Gleeson repeatedly noted that his decision was "influenced heavily" by the parties' joint recommendation as set forth in the plea agreement that the defendant be sentenced to between 168 and 210 months' imprisonment. Id. at 15-16; see also id. at 15 ("[A] deal is a deal and it strikes me that I ought to be considering where within that agreed upon recommended range – not agreed upon in an 11(c)(1)(C) sense but in every other respect it is exactly like that, where within that range I ought to sentence [the defendant]"); id. at 14 ("[M]y point is there's a substantial amount of negotiation here by experienced, able counsel on each side and it's produced this recommended range, the bottom end of which is 14 years . . . and I think I ought to defer to these agreements").

The defendant now argues that in light of the Supreme Court's decision in Johnson he was incorrectly designated as a career offender at sentencing and that he should be resentenced. In Johnson, the Supreme Court held that the residual clause in the definition of a "violent felony" in the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(2)(B) (ACCA), is unconstitutionally vague. While the government agrees that Johnson's holding

3

that the ACCA's residual clause is invalid applies to the identically worded residual clause in the career-offender guideline, see e.g., United States v. Darden, 605 F. App'x 545, 545-546 (6th Cir. July 6, 2015) (per curiam) (unpub.), the government submits that the Court should not grant the defendant's requested relief.

II.     The Defendant Waived The Right To Challenge His Sentence

First, the defendant waived his right to challenge his sentence on appeal or collateral review. As set forth above, the defendant expressly agreed that he would not challenge his sentence if he were sentenced to 276 months' imprisonment or below "without regard to the sentencing analysis used by the Court." It is well-settled that a knowing and voluntary waiver of the right to challenge a sentence is enforceable. United States v. Djelevic, 161 F.3d 104 (2d Cir. 1998); United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993) ("In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence confirming to the agreement"). This is because "[t]he waiver provision is a very important part of the agreement – the Government's motivating purpose, decreased effort and expense of protracted litigation is not well-met if the defendant is permitted to appeal that which he has agreed." Djelevic, 161 F.3d at 107.

Moreover, waivers are applicable to issues arising subsequent to the plea agreement, including, like the one here, issues created by new judicial decisions. United States v. Haynes, 412 F.3d 37, 39 (2d Cir. 2005) ("While ignorance of then-existing rights can validate a plea agreement in some cases, ignorance of future rights is unavoidable and not a basis for avoiding a plea agreement."). Indeed, this is because the possibility of changes in the law is simply one of the risks allocated by the parties' agreement. Id. (citing United States v. Morgan, 406 F.3d 135 (2d Cir. 2005)). Thus, where, as here, the plea is entered into voluntarily, informed, free of coercion and the defendant is cognizant of his rights at the time of the plea,[2] the waiver is enforceable against subsequent changes in the law and the Court should dismiss the defendant's motion. See e.g., Haynes, 412 F.3d at 38-39 (dismissing appeal challenging sentence because waiver was enforceable when defendant was sentenced to 70 months' imprisonment and had waived right to appeal any sentence of 108 months' imprisonment or less even though he had preserved at sentencing the issue of constitutionality of the mandatory Guidelines).[3]

---

[2] The defendant does not argue that he did not knowingly and voluntarily waive his right to appeal.

[3] The only exceptions to this rule are where a defendant seeks relief from the underlying plea where the plea was not knowing or voluntary or where sentencing was based on a constitutionally impermissible factor such as bias. Haynes, 412 F.3d at 38.

4

To the extent that the defendant argues that the government breached the plea agreement when it argued for a sentence at the top of the stipulated Guidelines range (as opposed to taking no position where within the Guidelines range the defendant should be sentenced) and therefore he is not bound by the waiver in the agreement, he is wrong. As set forth above, the defendant breached the agreement when he argued prior to and at the sentencing hearing that he was not a career offender and that the Court should sentence him to a term of imprisonment below the Guidelines range that he agreed he would recommend as an appropriate sentence. As a result of the defendant's breach, the government's obligation to take no position where within the agreed-to range the defendant should be sentenced was excused and it was permitted to argue for a top of the Guidelines range sentence.

The Court should reject any attempt by the defendant to further benefit from his breach by arguing that because the government argued for a sentence at the top of the agreed-to range, his waiver of the right to challenge his sentence is unenforceable. To permit the defendant to escape the waiver simply by breaching another contractual provision would seriously undermine the plea agreement process and the Court should not countenance it. See United States v. Hallahan, 756 F.3d 962, 971-73 (7th Cir. 2014) (rejecting defendant's argument that waiver was unenforceable because government breached plea agreement when government failed to argue for sentence at low end of Guidelines range: defendant, and not government, breached plea agreement when defendant fled prior to sentencing and defendant could not escape waiver simply by breaching another contractual provision because such a rule would seriously undermine the law of contracts).

III.  The Application of Johnson to the Career Offender Residual Clause is Not Retroactive on Collateral Review

The government concedes that the new rule of constitutional law announced in Johnson is retroactive in all ACCA cases – those pending on direct review as of the date Johnson was decided, see Griffith v. Kentucky, 479 U.S. 314, 328 (1987), as well as those that were final before that date that are challenged on collateral review. That is because, as applied to the ACCA, Johnson announced a new substantive rule entitled to retroactive effect. See Schriro v. Summerlin, 542 U.S. 348, 352 (2004).

This case, by contrast, involves a collateral attack challenging the use of the residual clause in the Guidelines' definition of a "crime of violence" to enhance a guidelines sentencing range. The retroactive character of Johnson in ACCA cases on collateral review does not govern the separate question of whether Johnson applies retroactively to the Sentencing Guidelines. While the application of Johnson to the ACCA is a substantive change in the law because it necessarily alters the statutory range of permissible sentences, the application of Johnson to the Sentencing Guidelines' residual clause produces procedural changes in the sentencing process that are not retroactive on collateral review.

5

The government has advocated that position in post-Johnson sentencing proceedings and in cases pending on direct review as of the date Johnson was decided. See Griffith v. Kentucky, 479 U.S. 314, 328 (1987) (holding that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final"). But different – and more restrictive – retroactivity principles govern when a defendant seeks to undo a final judgment on the basis of an intervening decision. See generally Teague v. Lane, 489 U.S. 288 (1989) (plurality opinion). Under Teague and its progeny, courts generally refuse to apply (or announce) new rules of criminal procedure for the first time in cases on collateral review. Id. at 311. Yet in order to grant collateral relief in a guidelines case based on Johnson, the Court would have to announce or apply two new rules that were not established before Johnson: (1) that the guidelines' residual clause is unconstitutionally vague, and (2) that due process vagueness principles apply to the sentencing guidelines.

Although the government agrees that both of these propositions represent the law after Johnson, neither proposition was dictated by the law as it existed before Johnson. And because these two propositions involve matters of sentencing procedure, the Court, consistent with Teague, should not recognize and apply them in a collateral challenge to a sentence that was final before Johnson. In sum, Johnson applies retroactively in all ACCA cases and in guidelines cases on direct review, but it does not apply retroactively in guidelines cases that were final before the decision was announced.

> A. New Substantive Rules Apply Retroactively On Collateral Review, But New Procedural Rules Almost Invariably Do Not

Under the Supreme Court's retroactivity analysis, new rules of criminal procedure do not apply retroactively to cases that became final before the decisions announcing those rules were issued. Teague, 489 U.S. at 310; see also Stringer v. Black, 503 U.S. 222, 228 (1992) (referring to the "interests in finality, predictability, and comity underlying our new rule jurisprudence").[4] The Teague defense "is not 'jurisdictional' in the

---

[4] Teague involved a state prisoner who sought a writ of habeas corpus under 28 U.S.C. § 2254(a), and the plurality's reasoning referred to the interests in federal-state comity as well as finality. 489 U.S. at 308. The courts of appeals have uniformly held, however, that finality interests alone suffice to render Teague applicable to federal prisoner collateral attacks. See, e.g., Duncan v. United States, 552 F.3d 442, 444 n.2 (6th Cir. 2009); Lloyd v. United States, 407 F.3d 608, 611 (3d Cir. 2005); United States v. Sanchez-Cervantes, 282 F.3d 664, 667 (9th Cir. 2002); United States v. Martinez, 139 F.3d 412, 416 (4th Cir. 1998); Daniels v. United States, 254 F.3d 1180, 1194 (10th Cir. 2001) (en banc); Van Daalwyk v. United States, 21 F.3d 179, 180 (7th Cir. 1994). Although the Supreme Court has not decided that issue, in Danforth v. Minnesota, 552 U.S. 264 (2008), it noted that body of lower court precedent and explained that much of the reasoning applicable to petitions under Section 2254 is "equally applicable" to motions under Section 2255. Id. at 269 n.4.

6

sense that [federal courts] must raise and decide the issue sua sponte," Collins v. Youngblood, 497 U.S. 37, 41 (1990), but where (as here) the government asserts a Teague defense, "the court must apply Teague before considering the merits of the claim." Caspari v. Bohlen, 510 U.S. 383, 389 (1994) (emphasis in original).

A Teague analysis involves three questions. The first question is whether the defendant is seeking to benefit from a "new" rule. After all, Teague was designed to safeguard the threat to finality that is posed by applying rules "not in existence at the time a conviction became final." 489 U.S. at 309. If the rule is new, then the second question is whether the rule is "procedural" as opposed to substantive. If the rule is both new and procedural, Teague bars the courts from announcing or applying the rule retroactively in cases on collateral review unless the rule falls within a narrow exception permitting the retroactive application of "watershed" rules of criminal procedure, i.e., rules on par with Gideon v. Wainwright, 372 U.S. 335 (1963). See Teague, 489 U.S. at 311.

1. New Rules

Whether a rule is "new" depends on whether "all reasonable jurists" would have felt compelled by precedent existing at the time the defendant's conviction became final to adopt the rule. See Chaidez v. United States, 133 S. Ct. 1103, 1107 (2013); see also Sawyer v. Smith, 497 U.S. 227, 234 (1990) ("The principle announced in Teague serves to ensure that gradual developments in the law over which reasonable jurists may disagree are not later used to upset the finality of state convictions valid when entered."). Accordingly, if reasonable jurists could disagree on whether a rule was compelled by prior precedent, then the rule is "new." Id.

A rule can be new in either of two ways: it can involve a request by a defendant that the court break new ground and adopt, in the defendant's own case, a previously unrecognized (or previously rejected) legal rule, or it can involve a request by a defendant that the court extend an existing precedent in a novel manner. See Stringer, 503 U.S. at 228. Both circumstances implicate Teague's animating concern: "validat[ing] reasonable, good faith interpretations of existing precedents made by [lower] courts even though they are shown to be contrary to later decisions." Butler v. McKellar, 494 U.S. 407, 414 (1990).

2. Procedural Versus Substantive Rules

Teague does not apply to all new rules, however; rather, the doctrine "by its terms applies only to procedural rules." Bousley v. United States, 523 U.S. 614, 620 (1998). New substantive rules are outside Teague's purview altogether. Id.[5]

---

[5] Teague, and many of the early cases applying its approach, initially characterized substantive rules as an "exception" to the general rule of non-retroactivity. See Teague, 489 U.S. at 311; see also Lambrix v. Singletary, 520 U.S. 518, 539 (1997). The

7

a. Substantive rules can result from judicial decisions construing a federal statute or the federal Constitution

A substantive statutory rule includes a rule that narrows the interpretation of an element in a federal criminal statute, thereby curtailing the statute's reach. See Bousley, 523 U.S. at 620-621 (holding that the narrowing interpretation of the "use" element of the crime defined in 18 U.S.C. § 924(c) adopted in Bailey v. United States, 516 U.S. 137 (1995), was substantive). A substantive constitutional rule includes a rule that "place[s] particular conduct or persons covered by [a] statute beyond the [government's] power to punish." Schriro, 542 U.S. at 352. Substantive conduct-restricting constitutional rules include decisions holding that the First Amendment prohibits criminal prosecution for flag burning. See, e.g., United States v. Eichman, 496 U.S. 310 (1990); Texas v. Johnson, 491 U.S. 397 (1989). Substantive penalty-restricting constitutional rules include decisions holding that the Eighth Amendment bars the death penalty for certain offenders. See, e.g., Roper v. Simmons, 543 U.S. 551 (2005) (juveniles); Atkins v. Virginia, 536 U.S. 304 (2002) (intellectually disabled). Those new rules are retroactive in cases on collateral review because they "'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." Schriro, 542 U.S. at 352 (quoting Bousley, 523 U.S. at 620).[6]

---

Court has since clarified that substantive rules are exempt from Teague's ambit (because Teague by definition only reaches procedural rules), and thus are not subject to its bar in the first place. See Beard v. Banks, 542 U.S. 406, 411 n.3 (2004); Schriro, 542 U.S. at 352 n.4. Either way, the bottom line is the same: new substantive rules are not subject to Teague's limitations on retroactivity.

[6] A new rule will also qualify as substantive, in the government's view, if it expands the range of possible sentencing outcomes beyond that which previously existed, even if it does not categorically prohibit the imposition of a certain punishment. See U.S. Amicus Br., Montgomery v. Louisiana, No. 14-280 (filed July 29, 2015) (arguing that Miller v. Alabama, 132 S. Ct. 2455 (2012), which held that the Eighth Amendment forbids the imposition of a mandatory life sentence on a juvenile homicide offender and thereby required the availability of lesser sentences, is a substantive rule retroactively applicable on collateral review). (The Supreme Court granted review to resolve disagreement in the lower courts on Miller's retroactivity and scheduled argument for October 13, 2015.) Conversely, a new rule that broadens the sentencing court's discretion without changing the lawful range of sentencing outcomes does not apply retroactively to cases on collateral review. For example, the remedial opinion in United States v. Booker, 543 U.S. 220 (2005), expanded sentencers' discretion by excising portions of the Sentencing Reform Act that made the Guidelines mandatory. Id. at 245-268. So did Pepper v. United States, 562 U.S. 476 (2011), by excising 18 U.S.C. § 3742(g)(2). 562 U.S. at 493-98. Yet courts have held that neither decision is retroactively applicable on collateral review. See, e.g., Duncan v. United States, 552 F.3d 442, 445-447 (6th Cir. 2009) (Booker's remedial holding); Blount v. United States, 2012 WL 2594109, at **3, 4 & nn.9-10 (E.D. Pa. Jul. 5, 2012) (unpub.) (Pepper).

8

    b. Procedural rules – i.e., rules that "regulate[] only the manner of determining the defendant's culpability," Schriro, 542 U.S. at 353 – can also result from the construction of a federal criminal statute or <u>the interpretation of the Constitution</u>

  A procedural rule of statutory construction includes a rule declaring that Congress intended for a particular fact in a statute to be an element of a crime, rather than a sentencing factor. See United States v. Gonzales, 327 F.3d 416, 416-417 (5th Cir. 2003) (holding that the rule of Castillo v. United States, 530 U.S. 120 (2000), which held that firearm type was an element of the crime defined in an earlier version of 18 U.S.C. § 924(c)(1), was a procedural rule). ).[7] A procedural rule of constitutional law includes a rule that requires facts to be treated as elements of a crime, see Apprendi v. New Jersey, 530 U.S. 466 (2000), or a rule regulating the admissibility of certain evidence at trial, see Crawford v. Washington, 541 U.S. 36 (2004). Unlike substantive rules, these rules do not forbid prosecution or conviction for a crime or otherwise alter the permissible range of outcomes; rather, they concern how the ultimate determination (guilt or innocence or the appropriate sentence) must be reached. In the case of Crawford, for example, the rule requires an opportunity for cross-examination of an out-of-court declarant; in the case of Apprendi and its progeny, the rules require a jury finding as to the operative fact beyond a reasonable doubt. Neither changes the range of legally permissible outcomes.

  New procedural rules therefore do not implicate the concerns that justify the retroactive application of new substantive rules: they do not produce a class of persons who have been convicted of non-criminal conduct or alter the range of sentences for which the defendant is eligible, but instead "merely raise the possibility" that the now-invalid procedure might have affected the course of the proceeding. See Schriro, 542 U.S. at 352. This "more speculative connection" to outcomes has led the Supreme Court to deny retroactive effect to new procedural rules in federal collateral review and thereby protect the finality of criminal judgments. See Teague, 489 U.S. at 311; see also Bousley, 523 U.S. at 620.

---

[7] Decisions declaring that Congress intended for a fact enumerated in a statute to be an element of a crime (as opposed to a sentencing factor) are qualitatively different from decisions redefining the meaning of a fact that has already been deemed an element of a crime. The former, illustrated by Castillo, are procedural: a ruling that a fact is an element, rather than a sentencing factor, does not alter the substantive reach of the statute but instead triggers a defendant's rights to have that fact initially found by a grand jury and subsequently found by a petit jury beyond a reasonable doubt. The latter, illustrated by Bailey, are substantive because they narrow the reach of the statute by redefining the boundary between lawful and unlawful conduct.

9

3. Watershed Rules

The almost invariable rule that new procedural rules do not apply retroactively to cases on collateral review is subject to a narrow exception that permits the retroactive application of "watershed rule[s] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Saffle v. Parks, 494 U.S. 484, 495 (1990). To come within this "extremely narrow" exception, id., "a new rule must meet two requirements: infringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction, and the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." Tyler v. Cain, 533 U.S. 656, 665 (2001). Although the Supreme Court has never found that a new procedural rule qualifies as watershed, see Whorton v. Bockting, 549 U.S. 406, 417, 418 (2007), it has explained that the exception is intended for rules bearing the same "primacy and centrality" to the criminal justice process as the rule of Gideon v. Wainwright, 372 U.S. 335 (1963). See, e.g., Saffle, 494 U.S. at 495; O'Dell v. Netherland, 521 U.S. 151, 167 (1997) (new rule deemed not to be watershed because it was "not on par" with the "sweeping rule of Gideon").

B. A Rule That Johnson Extends To The Sentencing Guidelines Would Represent A New, Non-Watershed Rule Of Procedure.

A ruling that Johnson renders the residual clause in the guidelines unconstitutionally vague depends on the announcement of not one, but two, new non-watershed rules of criminal procedure. Accordingly, Teague bars the Court from announcing those rules and from granting defendant collateral relief from his guidelines sentence.

1. A Rule Extending Johnson To The Federal Sentencing Guidelines Would Be "New"

No prior precedent dictated the conclusion that the guidelines' residual clause is unconstitutionally vague. To the contrary, the Supreme Court had twice rejected the argument that the identically worded residual clause in the ACCA was vague when that argument was pressed in dissenting opinions. See James v. United States, 550 U.S. 192, 210 n.6 (2007); Sykes v. United States, 131 S. Ct. 2267, 2277 (2010). To conclude as it did, Johnson had to "overrule[] [the] contrary holdings in James and Sykes," 135 S. Ct. at 2563, and "there can be no dispute that a decision announces a new rule it if expressly overrules a prior decision." Graham v. Collins, 506 U.S. 461, 467 (1993); accord Saffle, 494 U.S. at 488.

The conclusion that Johnson announced a new rule is particularly clear in this case, where this Court may grant relief only by extending Johnson's holding to the guidelines. Johnson voided the ACCA's residual clause for vagueness, and in doing so, abandoned the Court's previous efforts to narrow the scope of that clause through judicial construction. 135 S. Ct. at 2556-60, 2563. Yet Johnson nowhere mentioned the Sentencing Guidelines, even though the guidelines contain an identically-worded residual clause in

10

Section 4B1.2, and even though the government's supplemental brief in Johnson referred to Section 4B1.2's commentary in arguing that possession of a sawed-off shotgun poses an inherent risk of violence. See U.S. Supp. Br. 10, Johnson v. United States, No. 13-7120 (filed Mar. 20, 2015). A rule that the career-offender guideline's residual clause is unconstitutionally vague in light of Johnson would therefore be a "new" rule.

### 2. A Rule Extending Johnson To The Federal Sentencing Guidelines Would Be "Procedural"

Applying Johnson to the career-offender guideline's residual clause would also be a procedural rule subject to Teague. The effect of Johnson in the Guidelines context stands in contrast to the effect of Johnson under the ACCA. Under the ACCA, when a court relied on the residual clause to find that the defendant had the necessary three prior convictions, the defendant's sentence was elevated from a maximum of ten years to a minimum of 15 years. Compare 18 U.S.C. § 924(a)(2) with 18 U.S.C. § 924(e)(1). The constitutional rule announced in Johnson renders the 15-year minimum prison sentence illegal, and that change is substantive: it alters the permissible ranges of sentences. See, e.g., Price v. United States, --- F.3d ---, 2015 WL 4621024, at *3 (7th Cir. Aug. 4, 2015) ("Johnson, we conclude, announced a new substantive rule [in an ACCA case because a] defendant who was sentenced under the residual clause necessarily bears a significant risk of facing a punishment that the law cannot impose upon him."); In re Rivero, --- F.3d ---, 2015 WL 4747749, at *2 (11th Cir. Aug. 12, 2015) ("[W]e agree [with the defendant] that Johnson announced a new substantive rule of constitutional law.").[8]

---

[8] Price and Rivero both involved applications by defendants for permission to file a second or successive Section 2255 motion, which requires the defendant to make a prima facie showing that the new constitutional rule at issue has been "made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2255(h)(2). Although Price (an ACCA case) and Rivero (a career-offender case) both concluded that Johnson announced a new substantive rule of constitutional law, they disagreed about whether the Supreme Court had "made" that rule retroactive to cases on collateral review. See generally Tyler v. Cain, 533 U.S. 656, 662 (2001) (explaining that a new rule has been made retroactive by the Supreme Court to cases on collateral review when precedent logically and necessarily dictates that result). Price's holding and reasoning are correct. Rivero's holding – that career-offender claims are not redressable in a successive collateral attack – is correct, but portions of the court's opinion, including its view that Johnson is a substantive rule as applied to the guidelines, are incorrect. Indeed, Rivero had no need to comment on that issue because it held that the Supreme Court had not "made" Johnson retroactive to cases on collateral review for purposes of a successive collateral attack. In any event, this case involves an initial motion to vacate under Section 2255, not a successive motion, so the precise issue on which those courts disagreed is not implicated here.

11

Misapplications of the Sentencing Guidelines, in contrast, do not have the same consequences. A rule invalidating the crime-of-violence residual clause would establish that the defendant's guidelines range was incorrectly calculated, but it would not disturb the statutory boundaries for sentencing set by Congress for the crime. The career-offender guideline does not trigger a statutory mandatory minimum sentence that would not otherwise apply and does not elevate the statutory maximum, as is true under the ACCA. See Mistretta v. United States, 488 U.S. 361, 396 (1989) (Sentencing Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress"). Indeed, guidelines sentences must always be within the limits set by Congress; as a result, a guidelines sentence imposed on the basis of an incorrect guidelines range may be erroneous, but it is not illegal or unlawful as in a case involving prejudicial Johnson error under the ACCA. See Sun Bear v. United States, 644 F.3d 700, 705 (8th Cir. 2011) (en banc) (explaining that "Sun Bear's 360-month [guidelines] sentence," imposed on the basis of an error in classifying him as a mandatory career offender, "is not unlawful" because "[a]n unlawful or illegal sentence is one imposed without, or in excess of, statutory authority").[9]

An error in calculating the guidelines range, therefore, does not alter the statutory sentencing range or prevent reimposition of the same sentence without the career-offender enhancement, as would be true with prejudicial Johnson error in the ACCA setting. To illustrate, the defendant here faced a statutory sentencing range of 0 to 20 years' imprisonment for his offense, and his 180-month sentence as a career offender was well within those statutory parameters. The mere fact that a different (even lower) guidelines range might have applied but for the error, however, does not alter the statutory range within which the sentence is imposed, and it does not render the initial 180-month sentence unlawful.

---

[9] Narvaez v. United States, 674 F.3d 621 (7th Cir. 2011), stated that a misapplication of the formerly-mandatory career-offender guideline rendered a career-offender sentence "unlawful." Id. at 627; see also United States v. Doe, --- F.3d ---, 2015 WL 5131208, at *17 (3d Cir. Sept. 2, 2015) (following Narvaez). That characterization is incorrect, however, and conflicts with the Seventh Circuit's prior cases defining an "illegal sentence" as one that is "outside the applicable statutory range." United States v. Corbitt, 13 F.3d 207, 210 n.6 (7th Cir. 1993); see also United States v. Wolf, 90 F.3d 191, 193 (7th Cir. 1996) (sentence requiring defendant to pay a fine to two charities was "illegal" because "[t]he court had no statutory authority to sentence [defendant] to pay a fine to anyone other than the United States, and a sentence imposed outside the authority granted by statute is an illegal sentence"). Indeed, the lone authority cited by Narvaez to support that description, Welch v. United States, 604 F.3d 408 (7th Cir. 2010), involved a misapplication of the ACCA, not the guidelines; as such, the sentence in Welch exceeded the statutory maximum and thus was unlawful under Corbitt. Narvaez erred by importing Welch to the distinct context of the guidelines.

In cases describing appellate review under United States v. Booker, 543 U.S. 220 (2005), the Supreme Court has characterized errors in calculating a defendant's advisory guidelines range as "procedural," rather than substantive. See, e.g., Peugh v. United States, 133 S. Ct. 2072, 2083 (2013) ("Failing to calculate the correct [advisory] Guidelines range constitutes procedural error.") (citing Gall v. United States, 552 U.S. 38, 51 (2007)). That reflects the role of the Guidelines in the sentencing process: they are a step in imposing sentence, not a statutory direction on the range of available sentences. And although the meaning of "substance" and "procedure" can vary based on context, see Sun Oil Co. v. Wortman, 486 U.S. 717, 726 (1988), one court of appeals has relied on Peugh's reference to "procedural error" to conclude that new rules affecting the calculation of a defendant's advisory guidelines range are procedural and thus not retroactive on collateral review. See Hawkins v. United States, 724 F.3d 915, 917-918 (7th Cir. 2013) (supplemental opinion on denial of rehearing) (suggesting that because the Supreme Court described use of the incorrect Guidelines range as "procedural error," the Ex Post Facto holding in Peugh would not be applied retroactively on collateral review), cert. denied, 134 S. Ct. 1280 (2014); see also Herrera-Gomez v. United States, 755 F.3d 142, 146-147 (2d Cir. 2014) (holding that Peugh announced a new, non-watershed procedural rule that could not support a second-or-successive Section 2255 motion).

Nor does Johnson qualify as a substantive rule on the theory that it expands the sentencer's discretion to consider a broader range of options than those that existed previously. A rule invalidating a mandatory minimum statutory punishment illustrates this type of substantive rule. See Miller v. Alabama, 132 S. Ct. 2455 (2012) (invalidating mandatory life without parole for juvenile homicide defendants). At the time of sentencing, the court had one, and only one, sentencing option – life imprisonment. After the Supreme Court's decision in Miller, however, the sentencer in such a case must have discretion to consider a broader and more lenient range of sentencing options than those that existed previously. That rationale does not apply with respect to an error in calculating a defendant's guidelines range, however, because courts always had discretion, in admittedly varying degrees, to consider a range of sentencing options in guidelines cases.

Before United States v. Booker, supra, sentencing courts had the authority to "depart" from the guidelines range in appropriate cases. See U.S.S.G. § 5K2.0, p.s.; see also Koon v. United States, 518 U.S. 81, 92 (1996); Williams v. United States, 503 U.S. 193, 205 (1992) ("The selection of the appropriate sentence from within the guideline range, as well as the decision to depart from the range in certain circumstances, are decisions that are left solely to the sentencing court."). After Booker, sentencing courts have broader authority to "vary" from the now-advisory guidelines range, see Booker, 543 U.S. at 245-246, including, in particular, the career-offender guideline range. See, e.g., Spencer v. United States, 773 F.3d 1132, 1142 (11th Cir. 2014) (en banc) (stating that "sentencing courts depart or vary from the guideline range more often when they sentence career offenders"). That judicial authority to impose lesser sentences than called for by the guidelines illustrates that an erroneous career-offender designation is a procedural step in a multi-step process that results

13

in a court's selection of a sentence, not a substantive rule that expands or contracts the statutory range of outcomes. Accordingly, Johnson's application to the guidelines constitutes a procedural rule, not a substantive decision entitled to retroactive application in guidelines cases on collateral review.[10]

### 3. A Rule Extending Johnson To The Federal Sentencing Guidelines Would Not Be "Watershed"

The new procedural rule resulting from the extension of Johnson's holding to the guidelines' residual clause would not be "watershed." An error in calculating a defendant's guidelines range does not necessarily render the sentence unfair or unreliable in the way that a complete deprivation of the right to counsel renders a trial conducted without counsel unfair and unreliable. See, e.g., United States v. Cronic, 466 U.S. 648, 659 (1984) (complete denial of counsel at a critical stage renders the trial "unfair," and the "adversary process itself presumptively unreliable"). There will be many cases where the sentencing court's reliance on the residual clause did not affect the sentence (i.e., cases where the court indicates that it would have imposed the same sentence regardless of the range, or where the defendant has other qualifying prior convictions).

Johnson in any event does not alter our understanding of the bedrock procedural elements essential to the fairness of a sentencing proceeding. Johnson did not

---

[10] The government previously conceded that the rules announced in Begay v. United States, 553 U.S. 137 (2008); Chambers v. United States, 555 U.S. 122 (2009), and Descamps v. United States, 133 S. Ct. 2276 (2013), were substantive, and hence retroactive, on collateral review in ACCA and guidelines cases alike. See, e.g., Narvaez v. United States, 674 F.3d 621, 625 (7th Cir. 2011) (noting concession that Begay and Chambers are retroactive in a guidelines case). Courts considering the issue agreed that these decisions were retroactive in ACCA cases, but some courts expressed doubt about whether these decisions were retroactive in guidelines cases under both the formerly-mandatory guidelines, see Sun Bear v. United States, 644 F.3d 700, 703 (8th Cir. 2011) (en banc), and the now-advisory guidelines, see Hawkins v. United States, 724 F.3d 915, 917-918 (7th Cir. 2013) (supplemental opinion). After reexamining its position on this issue in light of Johnson, the government now believes that rules relating solely to the calculation of a defendant's guidelines range (mandatory and advisory alike) are procedural, and hence not retroactive to cases on collateral review. The government's prior contrary concessions do not bind this Court. See, e.g., United States v. Ogles, 440 F.3d 1095, 1099 (9th Cir. 2006) (en banc) ("We are not bound by a party's concession as to the meaning of the law, even if that party is the government and even in the context of a criminal case."). Nor do they confer any rights upon defendants. Cf. United States v. Apel, 134 S. Ct. 1144, 1151 (2014) ("Their views may reflect overly cautious legal advice based on division in the lower courts. Or they may reflect legal error. Either way, we have never held that the Government's reading of a criminal statute is entitled to any deference.").

14

recognize, for the first time, that the due process clause prohibits vague penal laws; rather, it merely extended that well-recognized constitutional principle, see, e.g., Lanzetta v. New Jersey, 306 U.S. 451, 458 (1939), to hold a particular statutory enhancement unconstitutionally vague. See Johnson, 135 S. Ct. at 2577. But new rules that merely apply a pre-existing legal principle in a new context do not "effect a sea change in criminal procedure comparable to that wrought by Gideon." Panetti v. Stephens, 727 F.3d 398, 414 (5th Cir. 2013).

      C.      A Rule That The Sentencing Guidelines Are Subject To Vagueness Challenges Would Represent A New, Non-Watershed Rule Of Procedure

The application of Johnson here would require application of an additional new procedural principle: it would require the conclusion that sentencing guidelines that form part of the process for determining a defendant's sentence within a statutory range must conform to constitutional standards that prohibit vague criminal laws. The government does not dispute that, in light of Peugh's analysis of the guidelines in applying Ex Post Facto principles, and Johnson's articulation of vagueness doctrine in the sentencing context, today, it is established that the Sentencing Guidelines must meet due process vagueness standards. But courts can only reach that conclusion by combining – and thereby extending – two distinct lines of precedent, one of which applied due-process vagueness principles to sentencing statutes and one of which concluded that the advisory guidelines implicate a separate constitutional provision (the Ex Post Facto Clause) that is tied in part to notice principles. Teague bars this Court from doing so for the first time on collateral review for cases that became final before Johnson.

      1.      A Rule Allowing Vagueness Challenges To The Federal Sentencing Guidelines Would Be "New"

No pre-Johnson precedent dictated, to all reasonable jurists, the conclusion that the Sentencing Guidelines are amenable to vagueness challenges. United States v. Batchelder, 442 U.S. 114 (1979), a pre-guidelines-era case, suggested that sentencing statutes that do not specify "with sufficient clarity the consequences of violating a given criminal statute" may be vulnerable to vagueness challenges, id. at 123, but that language was not necessary to the decision because the statute at issue "unambiguously specif[ied] the penalties available upon conviction." Id. Authority that supports a proposition "in dictum" does not "'control[]' or 'dictate[]' [a] result" for Teague purposes. Lambrix v. Singletary, 520 U.S. 518, 529 (1997); cf. Williams v. Taylor, 529 U.S. 362, 412 (2000) (opinion of O'Connor, J., for the Court) (statutory provision limiting federal habeas corpus relief for state prisoners to cases where the lower court decision violates "clearly established Federal law," which incorporates Teague's "new rule" standards, refers "to holdings, as opposed to dicta").

15

Peugh v. United States, supra, determined that the advisory guidelines are subject to the Ex Post Facto Clause, id. at 2078, but that decision did not address due process vagueness principles. Although Peugh's reasoning supports the conclusion that due process vagueness review applies to the Sentencing Guidelines, it does not dictate that result. See, e.g., Beard v. Banks, 542 U.S. 406, 414 (2004) (emphasizing that existing precedent must "compel," not merely "support," the result); Sawyer, 497 U.S. at 236 (prior decisions may "inform the analysis of [a] claim" without "compel[ling]" it).

The conclusion that a rule that sentencing guidelines must conform to due process vagueness principles is "new" under Teague is buttressed by several additional factors. First, historically, the traditional sentencing systems in this country afforded wide, unstructured discretion to sentencing courts. In those systems, judges both determined the factors that influence particular sentences and the weight placed on those factors in light of the defendant's background, criminal history, and conduct. See generally Koon, 518 U.S. at 113; Williams v. New York, 337 U.S. 241, 246 (1949). Yet no court ever suggested (much less held) that such a scheme – which afforded little, if any, notice of what sentence a defendant would receive and permitted outcomes that differed from judge to judge – was unconstitutionally vague.

Second, before Peugh and Johnson, three of the four courts of appeals to consider the issue rejected the argument that the guidelines were subject to due process vagueness review. See United States v. Brierton, 165 F.3d 1133, 1139 (7th Cir. 1999); United States v. Smith, 73 F.3d 1414, 1417-1418 (6th Cir. 1996); United States v. Wivell, 893 F.2d 156, 159-160 (8th Cir. 1990). Those circuits rested their holdings on the observation that "[t]he Guidelines do not establish the illegality of any conduct," and the view that "a defendant has no constitutional right to directives" that "are designed to assist and limit the discretion of the sentencing judge." Brierton, 165 F.3d at 1139; see also Wivell, 893 F.2d at 160 ("Even vague guidelines cabin discretion more than no guidelines at all."); Smith, 73 F.3d at 1417-1418. The Ninth Circuit held otherwise, see United States v. Johnson, 130 F.3d 1352 (1997) (citing United States v. Gallagher, 99 F.3d 329, 334 (9th Cir. 1996)), but even it acknowledged that vagueness challenges to the guidelines "have been questioned as theoretically unsound," id. at 1354 (citing Wivell, 893 F.2d at 159-160). And as in Batchelder, the analysis in Johnson and Gallagher was unnecessary to the decision because the challenged provisions were found not to be vague. See Johnson, 130 F.3d at 1354; Gallagher, 99 F.3d at 334.

Courts have expressed different views on whether circuit court precedent (as opposed to Supreme Court precedent) can ever "dictate" a rule for purposes of Teague. Compare Soffar v. Cockrell, 300 F.3d 588, 598 (5th Cir. 2002) (en banc) ("In order to qualify as existing, a rule must be dictated by Supreme Court precedent, not circuit court precedent.") with Schwab v. Crosby, 451 F.3d 1308, 1323 (11th Cir. 2006) ("A rule is considered new for Teague purposes unless it is dictated by precedent – mostly Supreme Court precedent, although federal court of appeals decisions are entitled to some respect in

16

the inquiry."). But "[e]ven assuming that circuit precedent, as opposed to Supreme Court precedent, is relevant in determining whether a rule is dictated by precedent under Teague," Billings v. Polk, 441 F.3d 238, 253 n.14 (4th Cir. 2006); Clemmons v. Delo, 124 F.3d 944, 955 n.11 (8th Cir. 1997), the fact that three circuits disagreed with the Ninth Circuit's approach supports the conclusion that reasonable jurists, before Peugh and Johnson, would not have felt compelled to adopt that view.

### 2. A Rule Allowing Vagueness Challenges To The Federal Sentencing Guidelines Would Be "Procedural"

A rule requiring that particular Sentencing Guidelines must be drafted with the same level of specificity as criminal statutes in order to satisfy due process vagueness concerns would be a procedural rule. It would dictate how Sentencing Guidelines must be framed in order to comply with due process; it would not dictate any particular substantive outcomes. This is evident from the sentencing process in the federal system, which encompasses at least three steps: first, a court determines the applicable guidelines range by applying the guidelines to the facts; second, it determines whether any deviations from that range are warranted (either by way of a "departure" or, in the post-Booker era, a "variance"); and third, it determines the appropriate sentence. Because the calculation of the guidelines range is itself merely a step in the process whereby a judge determines the appropriate sentence to impose, a rule requiring that the sentencing range (at step one) be defined with a certain level of precision is a rule of process. It relates to the manner for determining the starting point for federal sentencing – the initial calculation of the sentencing range – but it does not dictate particular sentencing outcomes, or alter the permissible range of outcomes. And this is particularly true for the advisory guidelines system in place after Booker: sentencing courts must calculate and consider the sentencing range, but the overarching obligation of a sentencing court is to impose a sentence that is sufficient but not greater than necessary to serve the purposes of sentencing. 18 U.S.C. § 3553(a); Kimbrough v. United States, 552 U.S. 85, 101 (2007). A rule that the guidelines, particularly advisory ones, must satisfy due process vagueness standards therefore differs fundamentally and qualitatively from a holding that a particular criminal statute or sentencing provision is substantively vague.

### 3. A Rule Allowing Vagueness Challenges To The Federal Sentencing Guidelines Would Not Be "Watershed"

A new procedural rule permitting vagueness challenges to the Guidelines would not rank as a watershed rule. A guideline would be entirely reasonable if it directed the judge to impose a "substantially" greater sentence within a range if the defendant's conduct caused "serious bodily injury," or displayed a "significant disregard of the risk of injury," even though those qualitative terms afford considerable leeway in application. Cf. Johnson, 135 S. Ct. at 2561 (distinguishing case-specific determinations). A rule that requires Sentencing Guidelines to conform to a particular level of precision therefore is an

17

incremental change in sentencing procedure, not a critical component of sentencing "accuracy." And in any event, a rule that vagueness principles apply to the Sentencing Guidelines would not alter our understanding of the "bedrock" elements of sentencing. A rule allowing Guidelines to be challenged on vagueness grounds would not compel the States to adopt sentencing guidelines in the way Gideon compelled States to provide counsel for indigent defendants. And such a rule would be relatively narrow: it would pertain only to guidelines that employ indeterminate terminology as measured against "an idealized ordinary case," rather than actual facts. See Johnson, 135 S. Ct. at 2561 ("As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct."). Such a rule lacks the sort of far-reaching, across-the-board ramifications that inhere in the Gideon rule. Accordingly, the Johnson rule "has none of the primacy and centrality of the rule adopted in Gideon." Saffle, 494 U.S. at 495; see also Whorton, 549 U.S. at 421 (rule at issue "is not in the same category with Gideon").

                                              Respectfully submitted,

                                              ROBERT L. CAPERS
                                              United States Attorney

                                By:      /s/
                                              Allon Lifshitz
                                              Robert T. Polemeni
                                              Assistant U.S. Attorneys
                                              (718) 254-6164/6044

cc:     Clerk of Court (JBW) (by ECF)
        Defense Counsel (by ECF)