**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X**

**UNITED STATES OF AMERICA**

**- against -**

**JOSEPH SCLAFANI,**

***Defendant.***

**- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X**

**No. 11-CR-345 (JBW)**

## MEMORANDUM OF LAW IN SUPPORT OF JOSEPH SCLAFANI'S MOTION TO AMEND

## STATEMENT

Defendant Joseph Sclafani submits this memorandum in support of his motion to amend his pending 28 U.S.C. § 2255 motion to include a claim of ineffective assistance of counsel. The new claim arises from the admitted failure of Sclafani's former attorney, Timothy Parlatore, to appeal Sclafani's sentence within the time limit prescribed in Fed. R. App. P. 4(b). Prior counsel's gaffe prompted the dismissal of Sclafani's appeal as untimely.

To remedy this deprivation of the right to appeal, Sclafani must be resentenced. Because the law has changed significantly since Sclafani's initial sentencing, he must be resentenced *de novo*.

## BACKGROUND

Sclafani was indicted on various narcotics distribution charges in September 2011. In an April 11, 2013 plea agreement, the government agreed to drop the charges and permit Sclafani to plead guilty to a narcotics conspiracy involving 15 to 50 kilograms of cocaine and a supervised release violation. Among other things, the agreement set forth an "estimate[d]" United States Sentencing Guidelines calculus for each offense. (Agreement ¶ 2.) While the district court and probation department were free to reject the agreement's guidelines analysis, the parties agreed to adhere to it at sentencing.[1]

But the sentencing phase revealed a discrepancy in the parties' understanding of their bargain. The disagreement centered on Sclafani's "career offender" status. While the government insisted that the agreement bound Sclafani to accept career offender treatment, Sclafani maintained that the parties intentionally left the issue open to dispute.

[1] Sclafani also agreed "not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, [his] conviction or sentence . . . in the event that the Court imposes a total term of imprisonment of 276 months or below." (Agreement ¶ 4.)

The agreement itself was ambiguous enough to support each side's interpretation.[2]

As to the enhancement's merits, Sclafani contended that one of his predicate convictions – a New York State conviction for possession of a

---

[2] Rather than stipulate to the career offender designation, the parties "assume[d]" it would apply. The section of the agreement dealing with the guidelines for Sclafani's narcotics conviction projected:

> [a] likely adjusted offense level under the guidelines [of] level 32, which is predicated on the following guidelines calculation:
>
> | | |
> |---|---|
> | Base Offense Level (§§ 2D1.1(c)(3), 4B1.1(b)(2)) | 34 |
> | Less: Global Disposition (§ 5K2.0)[] | <u>-2</u> |
> | Total: | <u>32</u> |
>
> If the defendant clearly demonstrates acceptance of responsibility . . . a two-level reduction will be warranted pursuant to U.S.S.G. § 3E1.1(a), resulting in an adjusted offense level of 30 and a range of imprisonment of 168 to 210 months, *assuming the defendant is determined to be a career offender under the guidelines*. The defendant stipulates to the above guidelines calculation.

Agreement at 3-4 (emphasis supplied).

weapon in the second degree (P.L. § 265.03) from the early '90s – was not a "crime of violence" under U.S.S.G. §§ 4B1.1(a)(3) and 4B1.2(a). To substantiate his position, Sclafani produced transcripts of the 1991 proceeding at which he pled guilty to the P.L. § 265.03 charge. The Government responded that Sclafani's fact-based approach was foreclosed by *U.S. v. Lynch*, 518 F.3d 164 (2d Cir. 2008), which had held that P.L. § 265.03 was "categorically" a crime of violence.

At Sclafani's sentencing on August 16, 2013, Judge Gleeson followed *Lynch*'s categorical approach, explaining that the "elements of [P.L. § 265.03] require conduct that the Second Circuit has found presents a serious potential risk of physical injury to another." (Sentencing Tr. 8-9.) Although the resulting career offender designation had no impact on Sclafani's offense level, it hiked his criminal history category from IV to VI, boosting the bottom of his guidelines range by 33 months. Aiming for the low-middle of the resulting 168-210 range, Judge Gleeson sentenced Sclafani to 180 months' imprisonment. (Sentencing Tr. 16-17.)

Judgment (ECF No. 251) was entered on August 27, 2013. Nearly four weeks later, prior counsel filed a notice of appeal (ECF No. 268) on Sclafani's behalf.

Although the tardy notice furnished grounds for the appeal's immediate dismissal,[3] the government waited until after prior counsel had submitted a merits brief to "note that Sclafani's notice of appeal was . . . . untimely." (7/17/2014 Ltr. at 6, 2d Cir ECF No. 43.[4]) In short order, the Second Circuit issued a terse order of dismissal, citing

> Federal Rule of Appellate Procedure 4(b)(1)(A)[, which] requires appeals in criminal cases to be filed 'within 14 days . . . of the entry of either the judgment or the order being appealed.' Appellant's notice of appeal was filed on September 23, 2013, more than 14 days after the date of the District Court's judgment of August 27, 2013[.]

(8/5/14 Order, 2d Cir. ECF No. 45.)

---

3 *See* Fed. R. App. P. 4(b)(1)(A) (requiring defendant to notice appeal "within 14 days after . . . the entry of either the judgment or the order being appealed"); *U.S. v. Frias*, 521 F.3d 229, 234 (2d Cir. 2008) (describing Rule 4(b)'s time limit as "mandatory and inflexible").

4 Citations to "2d Cir. ECF No[s]." refer to the electronic docket for *U.S. v. Sclafani*, No. 13-3634 (2d Cir.).

The failed appeal did not appear to sour the relationship between Sclafani and his attorney. To the contrary, when Judge Gleeson initiated a 18 U.S.C. § 3582 sentence reduction proceeding in November 2014, Sclafani opted to have prior counsel represent him in lieu of a court-appointed attorney.[5] (12/30/2014 Ltr., ECF No. 310.)

In January 2016, prior counsel filed a 28 U.S.C. § 2255 challenge to Sclafani's sentence premised on the Supreme Court's June 26, 2015 decision in *Johnson v. United States*, 135 S.Ct. 2551. (1/19/16 Motion, ECF No. 327.) *Johnson* struck down the "residual clause" of the Armed Career Criminal Act (18 U.S.C. § 924(e)(2)(B)(ii)), holding it void for vagueness. The language invalidated in *Johnson* also appears in the career offender guideline's definition of "crime of violence" (U.S.S.G. § 4B1.2(a)(2)). Because the guideline's presumptively invalid "residual clause" supported Sclafani's career offender designation, prior counsel contended that Sclafani was entitled to resentencing in the wake of *Johnson*.

---

[5] Judge Gleeson ultimately ordered a 12-month reduction of Mr. Sclafani's sentence. (*See* 1/14/15 Order, ECF No. 317.)

At the April 12, 2016 hearing on Sclafani's motion, the Court asked about the outcome of the direct appeal. Prior counsel responded that "[T]he appeal was denied on the timeliness issue." (4/12/16 Hearing Tr. at 16.) The exchange continued:

> THE COURT: That's what the docket sheet says. I saw that last night. What's the effect of that, that you had an opportunity to appeal and you didn't?
>
> MR. PARLATORE: Ultimately, Your Honor, where we are is that there's no question that under the law today and the law that we argued at the time - -
>
> THE COURT: Let's get the appeal out, because it troubled me last night. He had a right to appeal and raise these grounds you're now raising.
>
> MR. PARLATORE: Yes.
>
> THE COURT: He didn't appeal in a timely manner. Was he represented by counsel between the time of the sentence and the time you took the appeal, when you presented yourself?
>
> MR. PARLATORE: Yes.
>
> THE COURT: He was represented all during that time?
>
> MR. PARLATORE: I failed to file it on time.
>
> THE COURT: So he may have a 2255 motion then on the ground of inadequacy of counsel, theoretically; correct?

MR. POLEMENI: Correct.

(*Id.*) The Court subsequently invited the parties to submit supplemental briefs focusing on "the binding effect of that plea agreement and the failure to appeal, which will be based upon lack of adequate trial and appellate counsel." (*Id.* at 23.) Directing prior counsel to discuss with Mr. Sclafani whether "he wishes new counsel in view of the issue of inadequacy of present counsel," the Court adjourned the hearing. (*Id.*)

Sclafani promptly discharged Mr. Parlatore and retained new counsel. He now moves to amend his § 2255 motion to include a claim for ineffective assistance of counsel.

**THE INEFFECTIVE ASSISTANCE CLAIM**

Prior counsel's statements during the April 12 hearing left little room for dispute on the merits of Sclafani's ineffective assistance claim. Those statements, together with the materials accompanying this motion, establish that

(i) immediately after his August 2012 sentencing, Sclafani instructed prior counsel to appeal his career offender designation (Sclafani Aff. ¶ 4);

(ii) despite his client's prompt demand, counsel did not file the mandatory notice of appeal until after the time limits set

down in Fed. R. App. P. 4(b) had expired (Notice of Appeal, ECF No. 268; 4/12/16 Hearing Tr. 16); and

(iii) the appeal was dismissed as untimely (8/5/14 Order, 2d Cir. ECF No. 45).

Under these circumstances – that is, where an attorney's delay deprived his client of a direct appeal – a finding of ineffectiveness is virtually inescapable.

The Antiterrorism and Effective Death Penalty Act's one-year statute of limitations provides marginally better cover from Sclafani's claim. Sclafani contends that the one-year limitations period began on April 12, 2016 – when members of his family conveyed prior counsel's in-court admission of ineffectiveness to him. Prior to that date, Sclafani believed his appeal had been denied on the merits – a misimpression created by the cryptic explanation he received from prior counsel in late 2014. (Sclafani Aff. ¶ 6.)

While Sclafani's account is consistent with the record and corroborated by members of his family (Stacey Sclafani Aff. ¶¶ 4, 10), it is not undisputed. In his declaration, Mr. Parlatore insists he informed Sclafani of the grounds on which the Second Circuit had dismissed the appeal. (Parlatore Decl. ¶¶ 9-10.) Although Sclafani is prepared to test

counsel's recollection at an evidentiary hearing, the undisputed facts render a credibility contest unnecessary.

Assuming prior counsel disclosed his error to Sclafani in late 2014, the limitations period would begin once the 90-day window for seeking certiorari from the August 5 order closed on November 5, 2014. It was, therefore, still running in late June 2015, when Sclafani sought prior counsel's advice on the implications of *Johnson v. United States*. (Stacey Sclafani Aff. ¶¶ 5-8.)

Prior counsel's conduct at this point makes a compelling case for equitable relief. His ethical obligation was stark and unmistakable: he had to explain the conflict of interest arising from the bungled appeal and advise his client to file a *pro se* § 2255 motion based on ineffective assistance or immediately engage another attorney to do so. By this tack, Sclafani could obtain a new sentence under advisory guidelines that, after *Johnson*, could not treat him as a career offender. Instead, prior counsel undertook to continue representing Sclafani and, in the process, caused his unwitting client to forfeit a strong ineffective assistance claim for a relatively weak and untested one based on a retroactive application

of *Johnson*. Whether prior counsel's conduct stemmed from incompetence or self-interest, it was sufficiently extraordinary to equitably toll the limitations clock, rendering this motion timely.

## ARGUMENT

### I. SCLAFANI SHOULD BE PERMITTED TO PROCEED ON HIS CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

Motions to amend pending § 2255 petitions are subject to the "liberal amendment policy" of the Federal Rules of Civil Procedure. *Ching v. U.S.*, 298 F.3d 174, 179 (2d Cir. 2002) (Sotomayor, J.); *see* Fed. R. Civ. P. 15(a)(2) (instructing courts to "freely give leave [to amend] when justice so requires"); *Thaler v. U.S.*, 706 F. Supp. 2d 361, 369 (S.D.N.Y. 2009) ("motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.") (internal quotation marks omitted). As set forth

below, Sclafani's ineffective assistance claim is meritorious and timely. The motion to amend should therefore be granted.

### A. THE INEFFECTIVE ASSISTANCE CLAIM IS MERITORIOUS

Trial counsel's failure to comply with a defendant's "specific instructions" to appeal amounts to ineffective assistance of counsel, *Garcia v. U.S.*, 278 F.3d 134, 137 (2d Cir. 2002) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)), even if the defendant's plea agreement contained a waiver of appeal rights. *Campusano v. U.S.*, 442 F.3d 770, 776-77 (2d Cir. 2006) (Sotomayor, J.). To restore the defendant's "opportunity to file a direct appeal," a district court must either "(1) enter a new judgment imposing the same sentence in open court with defense counsel present . . ., or (2) if the district court discerns any useful purpose in further considering the sentence, resentence the defendant." *Garcia*, 278 F.3d at 138.

In this case, Sclafani instructed prior counsel to file an appeal immediately after his sentencing. Counsel complied, but only after Fed. R. App. P. 4(b)(1)(A)'s 14-day deadline had expired – a mistake that resulted in the Second Circuit's "dismissal of the appeal without reaching

its merits." *United States v. Batista*, 22 F.3d 492, 493 (2d Cir. 1994) (per curiam). Thus, inept representation "deprived" Sclafani "of his right to a direct appeal." *Garcia*, 278 F.3d at 137 (citing *Rodriquez v. U.S.*, 395 U.S. 327, 330 (1969)).

In light of the Supreme Court's decision in *Johnson v. U.S.*, 135 S.Ct. 2551 (2015), the appropriate remedy in this case is *de novo* resentencing. *Cf. U.S. v. Savoca*, 596 F.3d 154, 160 (2d Cir. 2010) (district court "under no obligation to conduct a complete resentencing" where "there had been no change in the law that would impact sentencing"). The government acknowledges that *Johnson* invalidated the "residual clause" of the career offender guideline. (3/29/2013 Ltr. at 6, ECF No. 331), *accord U.S. v. Hudson*, No. 14-2124, __ F.3d ___, 2016 WL 2621093, at *6 (1st Cir. May 9, 2016). As a result, Sclafani's 1990 conviction for unlawful possession of a weapon no longer qualifies as "'crime of violence,'" U.S.S.G. § 4B1.2(a), and he no longer meets § 4B1.1(a)'s definition of a career offender.

Relieved of the career offender designation and its attending elevation of his criminal history category, Sclafani's guidelines range

drops from 151-188 months to 121-151. Even under an advisory guidelines regime, this shift significantly impacts the sentencing analysis. *See Molina-Martinez v. U.S.*, 136 S.Ct. 1338, 1346 (2016) (observing that the guidelines serve both as "starting point" and "lodestar" for most sentencing proceedings); *id.* ("'[W]hen a guidelines range moves up or down, offenders' sentences [tend to] move with it.'") (quoting *Peugh v. U.S.*, 133 S.Ct. 2072, 2084 (2013)).

### B. SCLAFANI'S INEFFECTIVE ASSISTANCE CLAIM IS TIMELY

AEDPA's nonjurisdictional statute of limitations is an affirmative defense. *Day v. McDonough*, 547 U.S. 198, 205 (2006). Accordingly, the government bears the burden proving that a § 2255 motion is untimely. *Ray v. Clements*, 700 F.3d 993, 1006 (7th Cir. 2012), *accord Acosta v. Artuz*, 221 F.3d 117 (2d Cir. 2000) ("*responding* party" bears burden of pleading limitations defense to § 2254 petition). With this in mind, we address the timeliness issue here with an eye to establishing the viability of Sclafani's ineffectiveness claim. *Cf. Speed v. U.S.*, No. 04-336, 2013 WL 416026, at *2 (E.D.N.Y. Feb. 4, 2013) (denying motion to amend § 2255 where the defendant's new claim was "untimely").

### i. Law

A § 2255 motion is timely if it either (i) "accrued no earlier than one year prior" to the date on which the prisoner moved for relief, or (ii) accrued more than a year before its submission but was "equitably tolled on account of extraordinary circumstances." *Wims v. U.S.*, 225 F.3d 186, 189 (2d Cir. 2000). Section 2255(f) determines the accrual date. As relevant here, it provides that the one-year limitations period began to run on "the latest of—"

> (1) the date on which the judgment of conviction [became] final; [or . . .]
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1),(4).

Working back from the date of this filing, then, Sclafani's ineffective assistance claim is timely if it either (a) accrued on or after June 27, 2015, or (ii) accrued before June 27, 2015 but was tolled sometime before the one-year period expired.

### ii. Sclafani's Claim Accrued on April 12, 2016

In his affidavit supporting this motion, Sclafani describes a brief and uninformative discussion he had with prior counsel following the

dismissal of his appeal in August 2014.[6] *See Wims*, 225 F.3d at 190-91 ("fact-specific" inquiry into "the date on which the limitation clock began to tick" depends, among other things, on the details of the defendant's "conversation[s] with his lawyer"). Counsel, Sclafani recalls, reported that the appeal was "denied, no opinion." (Sclafani Aff. ¶ 6.) Relying on his attorney's competence and candor, Sclafani took this to mean that he had lost his appeal on the merits. *Id.*; *cf. Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("[A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice."); *Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 32-33 (2d Cir. 2015) (observing that a "litigant with an attorney" may "reasonably rely upon the attorney" to meet deadlines and perform "necessary work").

Due to his incarceration,[7] Sclafani labored under this false impression until April 12, 2016, when, at a hearing on his § 2255 motion,

---

[6] Although Sclafani cannot recall the exact date of this conversation, he remembers it occurring around the time that Judge Gleeson initiated the § 3582 proceeding in early November. (Sclafani Aff. ¶¶ 6-7.)

[7] In his declaration, Mr. Parlatore asserts that because "inmates have access to PACER" he believed that Sclafani had read the Second Circuit's dismissal order. (Parlatore Decl. ¶ 11.) Our investigation indicates that counsel is mistaken. While FCI McKean's inmates have access to a "law library" with certain "legal research" facilities, "[a]t no time do the inmates have any access to the Internet." FCI McKean

Judge Weinstein elicited details about the appeal's outcome from prior counsel in open court. (Sclafani Aff. ¶ 8; Stacey Sclafani Aff. ¶ 10.)

Sclafani's testimony, if credited,[8] puts the "date on which the facts supporting the [ineffectiveness] claim . . . could have been discovered through the exercise of due diligence" at April 12, 2016. 28 U.S.C. 2255(f)(4). As such, the present claim is timely.

**iii. Alternatively, Prior Counsel's Conduct in the Aftermath of the *Johnson* Decision Tolled the Statute of Limitations**

To avoid a costly evidentiary hearing, Sclafani advances an alternative timeliness analysis based on the doctrine of equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (AEDPA limitations period may be equitably tolled where "(1) [defendant] has been pursuing his rights diligently, and (2) [] some extraordinary circumstance stood in

---

Inmate Admission & Orientation Handbook at 11-12 (available at https://www.bop.gov/locations/ institutions/mck/MCK_aohandbook.pdf). With no means of accessing the web-based PACER service, Sclafani was obliged to rely on his attorney's representations concerning the appeal's outcome. *Cf. Wims*, 225 F.3d at 190-91 ("conditions of [inmate's] confinement" relevant to diligence inquiry).

[8] Mr. Parlatore also claims that he briefly explained the Second Circuit's "reasoning" to Sclafani. (Parlatore Decl. ¶¶ 9-10.) Sclafani denies this and, in the event that the Court schedules an evidentiary hearing, he will request leave to subpoena the Bureau of Prisons' recordings of his telephone calls with counsel during the relevant period.

his way and prevented timely filing") (internal quotation marks omitted). This analysis begins on November 5, 2014, the date "on which [Sclafani's] judgment of conviction [became] final."[9] 28 U.S.C. § 2255(f)(1). Counting from November 2014, there was still time on the limitations clock in late June 2015, when Sclafani sought prior counsel's advice on the implications of the Supreme Court's decision in *Johnson*. (Stacey Sclafani App. ¶ 5.) Counsel's "professional misconduct" at this crucial juncture serves as the basis for Sclafani's claim to equitable relief. *See Holland*, 560 U.S. at 651 (attorney's "professional misconduct," if sufficiently "egregious," may constitute "an extraordinary circumstance that warrants equitable tolling").

The *Johnson* decision, and Sclafani's prompt inquiry about it, forced prior counsel to confront the conflict of interest that had arisen from his inept handling of Sclafani's appeal. *See U.S. v. Blackledge*, 751 F.3d 188,

---

[9] November 5 marked the expiration of the 90-day period in which Sclafani could have sought Supreme Court review of the order dismissing his appeal. *See Clay v. U.S.*, 537 U.S. 522, 532 (2003) (for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitations period starts to run when the [90-day period] for seeking such review expires"); *Clark v. U.S.*, No. 03-cr-0018, 2010 WL 10836672, at *5 (W.D.N.Y. Sept. 28, 2010) (applying rule announced in *Clay* to an appeal dismissed on default) (R. & R.).

195-96 (4th Cir. 2014) (recognizing a "clear conflict of interest" in requiring attorneys "to identify . . . errors that they themselves may have made") (internal quotation marks omitted). Prior to *Johnson*, Sclafani's interest in pursuing an ineffective assistance claim was negligible. *See Savoca*, 596 F.3d at 160 (district court "under no obligation to conduct a complete resentencing" where "there had been no change in the law that would impact sentencing"). *Johnson*, by invalidating the "residual clause" of U.S.S.G. § 4B1.2(a) and eliminating the rationale for Sclafani's career offender designation, changed this calculus. Now, the same claim virtually guaranteed reconsideration of Sclafani's sentence. *Cf. Goodwin v. U.S.*, No. 02-cr-226, 2006 WL 3848685, at *8 (N.D.N.Y. Dec. 29, 2006) (defendant whose attorney failed to appeal was entitled to reconsideration of sentence under intervening decision in *U.S. v. Booker*, 543 U.S. 220 (2005)).

Pursuing this strategy was, however, "at odds" with prior counsel's interest "in avoiding damage to [his] own reputation." *Maples v. Thomas*, 132 S.Ct. 912, 925 n.8 (2012). Thus faced with a "significant risk that [his] professional judgment on behalf of a client [would] be adversely

affected by [his] own . . . personal interests," counsel had an ethical responsibility to sever his relationship with Sclafani or, at the very least, obtain his client's "informed consent, confirmed in writing." N.Y. Rules of Professional Conduct, Rule 1.7(a)-(b).

Prior counsel shirked this responsibility, agreeing to prepare the § 2255 motion without warning Sclafani of the pitfalls associated with conflicted representation. *See Maples*, 132 S.Ct. at 924 (observing that client "can [not] . . . be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys . . . are not representing him"). Then – after a delay of several months in which the limitations clock on the ineffective claim wound down and expired – he filed a motion premised on a retroactive application of *Johnson* in January of this year. (Motion, ECF No. 327.)

This claim, if plausible, was palpably weaker than a timely assertion of ineffective assistance of counsel would have been. For one thing, Sclafani waived the right to mount a collateral attack upon his "conviction or sentence" in his plea agreement. *See Adesina v. U.S.*, 461 F. Supp. 2d 90, 96 (E.D.N.Y. 2006) ("[A] valid waiver of the right to appeal

or otherwise challenge a sentence is enforceable even as to subsequent changes in the law that were not anticipated at the time the waiver was made."). The waiver issue – together with the fact that *Johnson*'s retroactivity, particularly with respect to the career offender guidelines, remained an open question in January 2016[10] – darkened Sclafani's prospects for obtaining relief under *Johnson*.

Subordinating his client's interests to his own, counsel placed Sclafani in a worse position than he would have been in had he sought § 2255 relief *pro se*. This "effective abandonment of the attorney-client relationship" warrants equitable relief. *Martinez*, 806 F.3d at 31; *Holland*, 560 U.S. at 653 (authorizing equitable relief from attorney misconduct that "seriously prejudiced" a client's bid for "federal habeas review"). Accordingly, the Court should conclude that the AEDPA statute of limitations was tolled on the date *Johnson* was decided, June 26, 2015, and that this motion is therefore timely.

---

[10] Since then, the Supreme Court has confirmed *Johnson*'s retroactivity. *See Welch v. U.S.*, 136 S.Ct. 1257 (2016). After *Welch*, several lower courts have applied *Johnson* to retroactively invalidate career offender enhancements. *See* **POINT II**, *infra.*

## II. THE WEIGHT OF NEW AUTHORITY DEFINITIVELY SUPPORTS SCLAFANI'S CLAIM TO RELIEF UNDER ***JOHNSON***

Sclafani's initial § 2255 motion – which sought relief under the new rule of constitutional law announced in *Johnson* – is fully briefed. We revisit it only to observe that recent decisions have undermined the government's position with respect to *Johnson*'s retroactivity.

In opposing Sclafani's initial § 2255 submission, the government attempted to draw a distinction between ACCA cases and career offender cases on collateral review. While *Johnson* "applies retroactively in all ACCA cases," the government theorized, "it does not apply retroactively in guidelines cases that were final before the decision was announced." (Gov't Oppn at 6, ECF No. 331.)

Several courts have rejected this proposition in recent months. *See, e.g.*, *U.S. v. Boone*, No. 12-cr-162, 2016 WL 3057655, at *6 (W.D. Pa. May 31, 2016) ("proposed distinction" in ACCA and career offender cases on collateral review was "not persuasive" given the "centrality of the guidelines" to the sentencing process); *U.S. v. Ramirez*, No. 10-cr-10008, 2016 WL 3014646, at *6-*7 (D. Mass. May 24, 2016) (using similar reasoning to reach same conclusion); *U.S. v. Dean*, No. 13-cr-137, __ F.

Supp. 3d __, 2016 WL 1060229, at *16 (D. Or. March 15, 2016) (rejecting proposition that "the retroactive nature of *Johnson*'s new rule changes when it is applied to the guidelines").

Moreover, at least two courts of appeals have now authorized second or successive § 2255 motions challenging career offender designations in the wake of *Johnson*. *See In re: Hubbard*, No. 15-276, 2016 WL 3181417, at *6-*7 (4th Cir. June 8, 2016); *In re Encinias*, No. 16-8038, 2016 WL 1719323, at *1-*2 (10th Cir. April 29, 2016).

These cases reflect an emerging consensus that defendants like Sclafani who were sentenced under U.S.S.G. § 4B1.2(a)'s "residual clause" are entitled to retroactive relief under *Johnson*.

## **CONCLUSION**

For the reasons given, Sclafani's motion to amend his § 2255 motion should be granted.

Dated: New York, New York
June 27, 2016

/s/

Jonathan Savella
810 Seventh Avenue, Suite 620
New York, New York 10019
(646) 801-2184
jonathan.savella@gmail.com

Marc Fernich
LAW OFFICE OF MARC FERNICH
810 Seventh Avenue, Suite 620
New York, New York 10019
(212) 446-2346
maf@fernichlaw.com

*Attorneys for Joseph Sclafani*