UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -                                    No. 11-CR-345 (JBW)

JOSEPH SCLAFANI,

*Defendant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## SENTENCING MEMORANDUM

Joseph Sclafani submits this memorandum and the accompanying letters in support of his request for a sentence within the revised Guidelines range of 110-137 months' imprisonment. A Guidelines sentence adequately reflects Sclafani's culpability, accounting for both the instant offense's gravity and his nonviolent criminal history. It also incapacitates Sclafani well into his middle fifties, providing specific deterrence without depriving him of an opportunity to repay his considerable debt to family and society. For these reasons, elaborated below, Sclafani submits that a Guidelines sentence is "sufficient, but not greater than necessary to fulfill the purposes of sentencing." *United*

*States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (quoting 18 U.S.C. §
3553(a)).

## I.   SCLAFANI'S CHARACTERISTICS & HISTORY

At 51 years old, Joseph Sclafani has spent the better part of his
adult life in prison. He has, nevertheless, maintained loving
relationships with his family (Ltrs 8-11, 13, 16-18), neighbors (Ltrs 21,
25), former coworkers (Ltrs 13) and childhood friends (Ltrs 14, 22, 24-
26). Far from describing a sociopath or hardened criminal, the letters
submitted on Sclafani's behalf portray a man genuinely concerned with
the wellbeing of those around him. Disposed to kindness rather than
aggression and sincerity rather than deceit, Sclafani is poorly suited to a
life of crime.

How, then, did he get here? According to the Probation Department,
Sclafani enjoyed "an uneventful upbringing" in a loving "middle-income"
family on Staten Island. PSR ¶ 65. This account, accurate as far as it
goes, is incomplete. Missing is the central figure in Sclafani's
development: the man from whom his family's material and emotional
security emanated. Augustus Sclafani, who died shortly after Sclafani's
original sentencing in this matter, was by all accounts a loving father and

husband. He was also a reputed mafia captain who, as Sclafani recalls in his letter to this Court (Ltrs 2), introduced his son at a young age to the professional criminality that pervaded Manhattan's Little Italy in the late 1970s.

Early proximity to this underworld, together with a natural inclination for rescue missions (*e.g.*, Ltrs 13, 21, 24), led to the 24-year-old Sclafani's disastrous involvement with Costabile Farace in 1989. Knowing Farace was a fugitive – authorities suspected him in the murder of an undercover DEA agent the previous February – Sclafani drove him to Brooklyn on the night of November 17. He parked on 81st Street and was climbing out of his car when gunmen opened fire from a passing van. Returning fire with a .38 caliber handgun Farace had handed him earlier that night, Sclafani was hit three times. When police arrived, they found Farace dead and Sclafani, gravely wounded, still holding the .38.

Sclafani paid a tremendous cost for his role in this incident. Besides the health repercussions – bullet fragments ruined his right kidney, damaged his liver and became permanently lodged in his spine – he faced parallel state and federal prosecutions for weapons possession and

3

harboring a fugitive. Pleading guilty to both charges in 1990, he ultimately served approximately four years in prison.

Released in mid-1994, Sclafani entered into the cycle of crime and punishment that led to his arrest for the instant offense in 2011. This sad and destructive pattern does, however, contain a thread of redemption. Sclafani's wife (now his ex) gave birth to his son, Joseph, in 1995. When Sclafani returned to prison in 1999, Augustus stepped into his son's shoes. According to Joseph, now a 21-year-old college student, "Poppy [Augustus] was like a father to me during my Dad's absence." Ltrs 9. Of the relationship between his father and his son, Sclafani touchingly writes: "I'm happy my dad and I used my past experiences as an example of what not to do in raising my son." Ltrs 2.

 Augustus's death in November 2013 marked a watershed in Sclafani's life. Forced to reflect upon his father's legacy and (for the first time, perhaps) confront his own, he is finally reckoning with the "collateral damage" he has caused over the past 30 years. Ltrs 3. Most importantly, he is soberly considering his own path to future redemption. Ltrs 6-7.

Sclafani's family – particularly the mother and sister who are Sclafani's most dedicated allies – is eager to provide him with the emotional and practical support he'll need to complete this journey. With their love, and help from those whose goodwill he has earned over the years (*e.g.*, Ltrs 12, 25), Sclafani is at last prepared for a life within the law's confines.

## II.  OFFENSE CONDUCT & PRIOR SENTENCING PROCEEDINGS

As set out in his April 11, 2013 agreement with the government, Sclafani pled guilty to a narcotics distribution conspiracy involving between 15 and 50 kilograms of cocaine. He also admitted that participation in the conspiracy violated the terms of his supervised release.

The plea agreement projected an "adjusted offense level of 30" for the narcotics conspiracy based on the following Guidelines calculation:

| | |
|---|---|
| Base Offense Level: | 34 (§§ 2D1.1(c)(3), 4B1.1(b)(2)) |
| Acceptance of Responsibility | -2 (§ 3E1.1(a)) |
| Global Disposition: | -2 (§ 5K2.0) |

Agreement at pg. 3-4.

While the agreement contained no express stipulation concerning Sclafani's criminal history category, it forecasted an advisory Guidelines

range of "168 to 210 months, assuming that [he] is determined to be a career offender." *Id.*

## A.   INITIAL SENTENCING

The propriety of treating Sclafani as a career offender became the principal issue at his August 2013 sentencing before Judge Gleeson.[1] The designation applies to a defendant who "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a)(3). Sclafani had been convicted of a controlled substance offense in 2000. *See* PSR ¶ 58. His eligibility, then, turned on whether his 1990 state court conviction for second degree weapons possession (P.L. § 265.03) constituted a crime of violence under § 4B1.2(a)(2)'s "residual clause." At the time of Sclafani's initial sentencing, it did. *See U.S. v. Lynch*, 518 F.3d 164, 172 (2d Cir. 2008) (P.L. § 265.03's "essential elements" qualify it as a "categorical" crime of violence); 8/16/2013 Sentencing Tr. 8-9 (concluding that *Lynch* required the court to count Sclafani's 1990 conviction as a crime of violence).

---

[1]      The parties also disputed the closely related question of whether Sclafani had forfeited the career offender issue in the agreement.

Although the resulting career offender designation had no impact on Sclafani's offense level, it hiked his criminal history category from IV to VI, boosting the bottom of his Guidelines range by 33 months. Aiming for the low-middle of the resulting 168-210 range, Judge Gleeson sentenced Sclafani to 180 months' imprisonment. 8/16/2013 Sentencing Tr. 16-17.

### B.   AMENDED SENTENCE

November 2014's retroactive amendment of the Guidelines' drug quantity table (§ 2D1.1(c)) prompted reconsideration of the sentence. *See* Order to Show Cause, ECF No. 296; 18 U.S.C. § 3582(c)(2). The amendment lowered Sclafani's base offense level from 34 to 32 (§ 2D1.1(c)(4)), potentially pushing his total offense level down from 30 to 28.

At a hearing before Judge Gleeson on January 8, 2015, the parties agreed Sclafani was eligible for a sentence reduction under 18 U.S.C. § 3582. 1/8/2015 Tr. at 2. The government nevertheless opposed the reduction on a technicality, contending that the 2-point "global disposition" credit that Sclafani (and his codefendants) initially received

7

was unavailable in a § 3582(c)(2) proceeding.[2] *Id.* at 3. Without the global disposition points, the government insisted, Sclafani's adjusted offense level remained at 30.

The court rejected the government's reasoning. Analogizing to *Freeman v. U.S.*, 564 U.S. 522 (2011)[3], Judge Gleeson reasoned that insofar as Sclafani's sentence was "explicitly pegged to the guideline range" for his offense, he was entitled to "benefit" from the retroactive amendments. 1/8/2015 Tr. at 6-7. Ultimately, the court reduced Sclafani's sentence to 168 months, within the advisory range for offense level 28, criminal history category VI.[4] *See* 1/14/15 Order, ECF No. 317.

---

[2]     The government's position appears to have been that the global disposition points were a "departure" (§ 5K2.0) that would improperly "reduce [Sclafani's] term of imprisonment . . . to . . . less than the minimum of the amended guideline range." § 1B1.10(b)(2); *see* 1/8/2015 Tr. at 5 (court remarks that "if it's a departure but not for substantial assistance, the government says you can't get it on resentencing").

[3]     *Freeman* confirmed the availability of § 3582(c)(2) relief to a defendant whose Fed. R. Crim. P. 11(c)(1)(C) plea agreement called for a sentence "'based on'" the Guidelines applicable to his offense. 564 U.S. at 539 (Sotomayor, J., concurring).

[4]     Noting that the 168-month sentence fell inside the advisory range for levels 28 and 30 (*see* U.S.S.G. Ch. 5, pt. A), Judge Gleeson suggested that it "kind of mooted" the parties' dispute over the appropriate offense level. 1/8/2015 Tr. at 7. That may have been the case from a practical standpoint. As a legal matter, however, the Judge Gleeson could not have reduced Sclafani's sentence without first concluding that his offense level had been retroactively amended to level 28. *See* 18 U.S.C. § 3582(c)(2) (limiting courts' authority to reduce an otherwise final sentence to cases in which the defendant "[was] sentenced . . . based on a sentencing range that has subsequently

## III.   REVISED GUIDELINES CALCULATION

In August 2016, this Court vacated Sclafani's sentence on the grounds that ineffective counsel had deprived him of an appeal. *See* 8/15/2016 Tr. at 17-18; Order, ECF No. 345. In anticipation of resentencing, the Probation Department prepared a Revised Presentence Investigation Report, which it distributed to counsel on November 9, 2016.

The Revised PSR's Guidelines analysis differs in one respect from that applied at the November 2014 § 3582 proceeding: it no longer designates Sclafani a career offender. *See* PSR ¶ 51. This difference – the result of recent revisions to § 4B1.2's definition of "[t]he term 'crime of violence'"[5] – lowers Sclafani's criminal history category from VI to IV. *See* PSR ¶ 59. This demotion has a considerable impact on his advisory Guidelines range. While his total offense level remains at 28,[6] the

been lowered"); § 1B1.10(a)(2)(B) (sentence reduction inappropriate where amendment "does not have the effect of lowering the defendant's guideline range.")

[5]   Supplement to the 2015 Guidelines Manual, Amendment 798 (Aug. 1, 2016).

[6]   The total offense level is calculated as follows:

Base Offense Level:            32 (§ 2D1.1(c)(4); PSR ¶ 32)

applicable range drops from 140-175 to 110-137 months. *Id.; see* U.S.S.G. Ch. 5, Pt. A.

## IV.   SCLAFANI SHOULD BE SENTENCED WITHIN THE REVISED GUIDELINES RANGE

Resentencing Sclafani within the revised Guidelines range is appropriate for several reasons.

**First**, doing so accords with the terms of Sclafani's plea agreement, which as Judge Gleeson observed, was "explicitly pegged" to the applicable Guidelines. 1/8/2015 Tr. 6. By giving both sides what they bargained for, a Guidelines sentence is fair to the parties. It is, moreover, consistent with the institutional interest in promoting negotiated settlements in criminal cases. *See Blackledge v. Allison*, 431 U.S. 63, 71, (1977) (observing that the viability of plea bargaining depends on the willingness of courts to enforce the terms of parties' deals).

**Second,** the decade-long term of incarceration called for under the revised Guidelines is ample punishment, reflecting the gravity of

---

Global Disposition:          -2 (§ 5K2.0; PSR ¶ 111)

Acceptance of Responsibility:   -2 (§ 3E1.1(a); PSR ¶ 52)

Sclafani's current offense and society's opprobrium for repeat offenders. The specter of 10 years' confinement in a federal penitentiary is, by the same token, a manifestly "adequate deterren[t] to criminal conduct." 18 U.S.C. § 3553(a)(2)(B).

**Third,** a sentence in the 110-137 month range achieves specific deterrence by incapacitating Sclafani, now 51, into his mid-50s. The Sentencing Commission's recently-completed study of recidivism authoritatively confirms that defendants in this age group are far less likely to recidivate than are younger offenders. *See* Recidivism Among Federal Offenders: A Comprehensive Overview, at p. 23 (March 2016).[7] Statistics aside, Sclafani realizes that an additional felony conviction may put him in prison for the remainder of his life. The terrible prospect is in itself a deterrent to future crimes.

---

[7] Available online at: www.ussc.gov/research/research-publications/recidivism-among-federal-offenders-comprehensive-overview.

## V.   CONCLUSION

For the foregoing reasons, Joseph Sclafani should be sentenced in accordance with the Sentencing Guidelines.

Dated: New York, New York
        December 5, 2016

_____/s/_____
Jonathan Savella
810 Seventh Avenue, Suite 620
New York, New York 10019
(646) 801-2184
jonathan.savella@gmail.com

Marc Fernich
LAW OFFICE OF MARC FERNICH
810 Seventh Avenue, Suite 620
New York, New York 10019
(212) 446-2346
maf@fernichlaw.com

*Attorneys for Joseph Sclafani*
